**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

BERNHARD ENGL, individually and on behalf of all others similarly situated,

     Plaintiff,

        v.

NATURAL GROCERS BY VITAMIN COTTAGE, INC., a Delaware
corporation, and VITAMIN COTTAGE NATURAL FOOD MARKETS, INC.,
a Colorado Corporation,

     Defendant.

---

**CLASS ACTION COMPLAINT
Jury Trial Demanded**

---

Plaintiff Bernhard Engl ("Plaintiff") brings this Class Action Complaint against Defendants Natural Grocers by Vitamin Cottage, Inc., and Vitamin Cottage Natural Food Markets, Inc., (collectively, "Defendants" or "Natural Grocers"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I. NATURE OF THE ACTION

1.    This action seeks redress for Natural Grocers' failure to secure and safeguard its customers' personal financial data, including credit and debit card information.

2.    On March 2, 2015, Natural Grocers disclosed a data breach involving the theft of customers' credit-card and debit-card data with an unknown number of compromised customer accounts (the "Security Breach"). While Natural Grocers has not yet disclosed how many of its 95 store locations were affected by the breach, a source with inside knowledge of the breach

revealed that hackers attacked a weakness in Natural Grocers' database in December 2014, and from there, planted card-snooping malware in the grocer's point-of-sale systems.

3.     Natural Grocers' security failure enabled hackers to steal financial data from within Natural Grocers' systems and, on information and belief, subsequently make unauthorized purchases on consumers' credit and debit cards, while otherwise putting Class members' financial information at serious and ongoing risk. The hackers continue to use the information they obtained as a result of Natural Grocers' inadequate security to exploit consumers and Class members throughout the country.

4.     The Security Breach was caused and enabled by Natural Grocers' knowing violation of its obligations to abide by best practices and industry standards in protecting customers' personal information. Natural Grocers failed to comply with security standards and allowed their customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could have prevented or mitigated the Security Breach that occurred.

5.     Natural Grocers has also failed to disclose the extent of the Security Breach and notify its affected customers in a timely manner. Natural Grocers failed to take other reasonable steps to clearly and conspicuously inform its customers of the nature and extent of the Security Breach. By failing to provide adequate notice, Natural Grocers prevented (and continues to prevent) Class members from protecting themselves from the Security Breach.

6.     Accordingly, Plaintiff, on behalf of himself and other members of the Class, asserts claims for breach of implied contract, and violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*, and seeks monetary damages, injunctive relief, and all other relief as authorized in equity or by law.

## II. JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than Natural Grocers State of citizenship.

8.      This Court has personal jurisdiction over Defendants because both companies are registered with the Colorado Secretary of State to conduct business in the State of Colorado, and do conduct substantial business in the State of Colorado, such that Defendants have significant continuous and pervasive contacts with the State of Colorado. Defendants also maintain numerous store locations in the State of Colorado, including multiple stores compromised in the Security Breach

9.      Venue is proper in this District pursuant to 28 U.S. C. § 1391(b)(1), (2) and 1391(c) as Defendants are deemed to reside in this judicial district because they are subject to personal jurisdiction here; and a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this jurisdiction.

## III. PARTIES

*Plaintiff*

10.      Plaintiff Bernhard Engl is a citizen of Colorado and resides in El Paso County, Colorado.

11.      Plaintiff routinely shops at Natural Grocers. On average, he purchases groceries from his local Natural Grocers store approximately once a week.

12.      Between December 2014 and March 2015, Plaintiff shopped at a Natural Grocers located in Colorado Springs on various occasions, using his credit card to pay for his purchases. Each time he did so, he entered into an implied contract with Natural Grocers for the adequate

protection of his credit card information, and had his sensitive financial information exposed as a result of Natural Grocers inadequate security.

13.     On March 8, 2015, Plaintiff's Visa credit card was declined when he attempted to use it at a gas station. Upon contacting his credit card company, he learned that his card had been cancelled due to fraudulent activity on his card.

*Defendants*

14.     Defendant Natural Grocers by Vitamin Cottage, Inc. is a publicly traded company organized under the laws of Delaware. Its headquarters and principal place of business are located in Lakewood, Colorado. The company operates over 90 grocery stores located in 15 states through its wholly-owned subsidiary, Vitamin Cottage Natural Food Markets, Inc.

15.     Defendant Vitamin Cottage Natural Food Markets, Inc. is a privately held corporation organized under the laws of Colorado. The company's headquarters and principal place of business are located in Lakewood, Colorado, and it is a wholly-owned subsidiary of Defendant Natural Grocers by Vitamin Cottage, Inc.

## IV. FACTUAL BACKGROUND

*The Data Breach*

16.     Natural Grocers operates a chain of over 90 grocery stores in 15 states. Like many other grocery stores, Natural Grocers accepts debit and credit card payments.

17.     On information and belief, an untold number of consumers became the victims of a data breach when their personal information was taken from Natural Grocers' payment card information systems as a result of malicious software. According to its press release, Natural Grocers is continuing to investigate the breach, although it has concluded that its customers'

payment card information was compromised.[1] Natural Grocers' investigation of the breach remains ongoing, and it has yet to provide any information about the scope of the breach and the number of affected consumers.

18.     Although Natural Grocers' press release did not disclose the date on which the breach occurred, one report indicates that the breach dated back to before Christmas of 2014, and that cards stolen in the Natural Grocers breach are being sold on the black market.[2]

19.     Natural Grocers' failure to comply with reasonable security standards provided Natural Grocers with short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of Natural Grocers own customers – including Class members here – who have been subject to the Security Breach or otherwise have had their financial information placed at serious and ongoing risk.

20.     Natural Grocers allowed widespread and systematic theft of its customers' financial information. Natural Grocers' actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' financial information.

*Security Breaches Lead to Identity Theft*

21.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying data to open financial accounts, receive government benefits and incur charges and credit in a person's name.[3] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating. In addition, the GAO Report states that victims of identity theft will face

---

[1]     *Statement on Recent Payment Card Security Incident* (March 4, 2015), https://www.naturalgrocers.com/about/news/company-news/statement-on-recent-payment-card-security-incident/
[2]     "Perhaps they aren't reporting the fraud to Natural Grocer, but banking sources have told this author about a pattern of card fraud indicating cards stolen from the retailer are already on sale in the cybercrime underground." Brian Krebs, *Natural Grocers Investigating Card Breach* (March 2, 2015), http://krebsonsecurity.com/2015/03/natural-grocers-investigating-card-breach/
[3]     *See* http:///www.gao.gov/new.items/d07737.pdf.

"substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

22.    According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumer's finances, credit history and reputation and can take time, money and patience to resolve.[4] Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[5]

23.    A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

### The Monetary Value of Privacy Protections

24.    At a FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[6]

---

[4]*See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (2012), http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf (last visited Dec. 19. 2013).
[5] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id*.
[6] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited Dec. 20, 2013).

25.     Though Commissioner Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[7]

26.     The FTC has also recognized that consumers' data is a new – and valuable – form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[8]

27.     Recognizing the high value that consumers place on their personally identifiable information ("PII"), many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent, consumers will make a profit from the surrender of their PII.[9] This business has created a new market for the sale and purchase of this valuable data.[10]

28.     Consumers place a high value not only on their PII, but also on the *privacy* of that data. Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers'] privacy

---

[7] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited Dec. 20, 2013).
[8] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited Dec. 20, 2013).
[9] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited Dec. 20, 2013).
[10] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited Dec. 20, 2013).

information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[11]

29.     Notably, one study on website privacy determined that U.S. consumers valued the restriction of improper access to their personal information – the very injury at issue here – between $11.33 and $16.58 per website.[12]

30.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

31.     In addition, members of the payment card industry ("PCI") established a Security Standards Counsel ("PCI SSC") in 2006 to develop PCI Data Security Standards ("PCI DSS") for increased security of payment processing systems.

32.     The PCI DSS provides, "PCI DSS applies to all entities involved in payment card processing—including merchants."[13] Natural Grocers is a merchant that accepts payment cards.

33.     The PCI DSS requires a merchant to, among other things, protect cardholder data, maintain a vulnerability management program, implement strong access control measures, and regularly monitor and test networks.

34.     On information and belief, Natural Grocers failed to comply with the PCI DSS, resulting in the Security Breach.

***Damages Sustained By Plaintiff and the Class***

35.     A portion of the services purchased from Natural Grocers by Plaintiff and the Class necessarily included compliance with industry-standard measures with respect to the

---

[11] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, available at http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited Dec. 20, 2013); Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).
[12] *Id.*
[13] *Requirements anf Security Assessment Procedures, Version 3.0*, Payment Card Industry Data Security Standard, at 5 (Nov. 2013), https://www.pcisecuritystandards.org/documents/PCI_DSS_v3.pdf.

collection and safeguarding of PII, including their credit and debit card information. Because Plaintiff and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiff and the Class incurred actual monetary damages in that they overpaid for the products purchased from Natural Grocers.

36.     Members of the Class have suffered additional injury in fact and actual damages including monetary losses arising from unauthorized bank account withdrawals and/or related bank fees charged to their accounts.

37.     Plaintiff and the Class suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Natural Grocers wrongful conduct, particularly given the incidents of actual misappropriation from Class members' financial accounts, as detailed above.

38.     After the breach, Natural Grocers provided certain payment card numbers to the major credit card brands, requested that they monitor those cards for fraudulent activity, and if necessary, notify their customers of any suspicious charges.[14] Yet there is no indication that Natural Grocers actually notified the potentially-affected customers themselves. Moreover, as explained above, fraudulent use of cards might not be apparent for years. Therefore, consumers must expend considerable time taking these precautions for years to come.

39.     Plaintiff and the Class suffered additional damages based on the opportunity cost and value of time that Plaintiff and the Class have been forced to expend to monitor their financial and bank accounts as a result of the Security Breach. Such damages also include the cost of obtaining replacement credit and debit cards.

---

[14] *Statement on Recent Payment Card Security Incident* (March 4, 2015), available at https://www.naturalgrocers.com/about/news/company-news/statement-on-recent-payment-card-security-incident/ (last visited June 2, 2015).

## V. CLASS ACTION ALLEGATIONS

40.     Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> All persons residing in the United States who made an in-store purchase at a Natural Grocers store using a debit or credit card at any time from December 25, 2014 through March 4, 2015 (the "National Class").

Excluded from the National Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

41.     Plaintiff brings Count II, as set forth below, on behalf of himself as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons residing in the State of Colorado who made an in-store purchase at a Natural Grocers store using a debit or credit card at any time from December 24, 2014 through March 4, 2015 (the "Colorado Class").

Excluded from the Colorado Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

42.     The National Class and Colorado are collectively referred to as the "Class," unless specifically indicated otherwise.

43.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Natural Grocers books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

45.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a.    Whether Natural Grocers failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' sensitive financial information;

b.    Whether Natural Grocers properly implemented its purported security measures to protect customer financial information from unauthorized capture, dissemination, and misuse;

c.    Whether Natural Grocers conduct violates the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

d.    Whether Natural Grocers conduct constitutes breach of an implied contract;

e.    Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief.

46.    Natural Grocers engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are

involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

47.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Natural Grocers uniform misconduct described above and were thus all subject to the Security Breach alleged herein. Further, there are no defenses available to Natural Grocers that are unique to Plaintiff.

48.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously. The interests of the class will be fairly and adequately protected by Plaintiff and his counsel.

49.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Natural Grocers. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

50.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Natural Grocers has acted or refused to act on grounds generally applicable to Natural Grocers

and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

51.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Natural Grocers and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Natural Grocers, so it would be impracticable for Class members to individually seek redress for Natural Grocers wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
**Breach of Implied Contract**
**(On Behalf of the National Class)**

52.     Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

53.     Natural Grocers customers who intended to make in-store purchases with debit or credit cards were required to provide their card's magnetic strip data for payment verification.

54.     In providing such financial data, Plaintiff and the other members of the Class entered into an implied contract with Natural Grocers whereby Natural Grocers became obligated to reasonably safeguard Plaintiff's and the other Class members' sensitive, non-public, information.

55.     Natural Grocers breached the implied contract with Plaintiff and the other members of the Class by failing to take reasonable measures to safeguard their financial data.

56.     Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to: (a) unauthorized charges on their debit and credit card accounts; (b) theft of their personal and financial information; (c) costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; (d) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Natural Grocers data breach, including, without limitation, finding fraudulent charges, cancelling and reissuing cards, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Natural Grocers data breach; (e) the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their credit card, debit card, and personal information being placed in the hands of criminals and being already misused via the sale of consumers' information on the Internet card black market; (f) damages to and diminution in value of their personal and financial information entrusted to Natural Grocers for the purpose of purchasing products from Natural Grocers and with the understanding that Natural Grocers would safeguard their data against theft and not allow access and misuse of their data by others; and (g) the continued risk to their personal information, which remains in the possession of Natural Grocers and which is subject to further breaches so long as Natural Grocers fails to undertake appropriate and adequate measures to protect data in its possession.

## COUNT II
### Violation of the Colorado Consumer Protection Act
### (On Behalf of the Colorado Class)

57.     Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

58.     Natural Grocers failed to disclose the material fact that its computer systems and data security practices were inadequate to safeguard customers' personal and financial data from theft.

59.     Plaintiff and the other members of the Class were deceived by Natural Grocers' failure to properly implement adequate, commercially reasonable data security practices to protect their private financial information while shopping at Natural Grocers.

60.     Natural Grocers intended for Plaintiff and the other members of the Class to rely on Natural Grocers to protect the information furnished to it in connection with their debit and credit card transactions, in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

61.     Natural Grocers instead handled Plaintiff's and the other Class members' personal information in such manner that it was compromised.

62.     Natural Grocers failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

63.     It was foreseeable that Natural Grocers' willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

64.     Natural Grocers benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Natural Grocers saved on the cost of those security measures.

65.     Natural Grocers' fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on Natural Grocers' deception that their financial information was secure and protected when using debit and credit cards to shop at Natural Grocers.

66.     By engaging in such conduct and omissions of material facts, Natural Grocers violated Colo. Rev. Stat. §6-1-101, *et seq.* in various ways, including, but not limited to: (a) knowingly making a "false representation as to the characteristics . . . uses, [and] benefits . . . of goods, food, services or property;" (b) representing that "goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;" and (c) failing to "disclose material information concerning goods, services, or property which information was known at the time of advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." *Id.* at §105(1)(e), (g) and (u).

67.     Natural Grocers also violated Colo. Rev. Stat. §6-1-101, *et seq.* by failing to provide timely, adequate, and direct notice of the Security Breach to Plaintiff and the Class pursuant to Colorado's Data Breach Statute, Colo. Rev. Stat. §6-1-716. [15]

68.     Plaintiff and the other Class members have suffered injury in fact and actual damages including lost money and property as a result of Natural Grocers' violations of Colo. Rev. Stat. § 6-1-101, *et seq.*, including, but not limited to: (a) unauthorized charges on their debit and credit card accounts; (b) theft of their personal and financial information; (c) costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; (d) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Natural Grocers data breach, including, without limitation, finding fraudulent charges, cancelling and reissuing cards, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Natural Grocers data breach; (e) the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their credit card,

---

[15] Colo. Rev. Stat. §6-1-105(1)(x) provides that a violation of "part 7 of this article," which encompasses Colo. Rev. Stat. §6-1-716, shall constitute a deceptive trade practice.

debit card, and personal information being placed in the hands of criminals and being already misused via the sale of consumers' information on the Internet card black market; (f) damages to and diminution in value of their personal and financial information entrusted to Natural Grocers for the purpose of purchasing products from Natural Grocers and with the understanding that Natural Grocers would safeguard their data against theft and not allow access and misuse of their data by others; and (g) the continued risk to their personal information, which remains in the possession of Natural Grocers and which is subject to further breaches so long as Natural Grocers fails to undertake appropriate and adequate measures to protect data in its possession.

69.     Plaintiff and the other Class members' injuries were proximately caused by Natural Grocers' fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others.

70.     Plaintiff and the Class are thus entitled to equitable relief to remedy Natural Grocers' violation of Colo. Rev. Stat. 6-1-101, *et seq.*

## VII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury of all claims in this complaint so triable.

## VIII. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Natural Grocers, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

B.    Ordering Natural Grocers to Plaintiff and the Class actual damages arising from Natural Grocers' breach of contract.

C.    Ordering Natural Grocers to pay for not less than three years of credit card monitoring services for Plaintiff and the other members of the Class;

D.   Ordering Natural Grocers to disseminate individualized notice of the Security Breach to all Class members and to post notice of the Security Breach in all of its affected stores;

E.   Ordering Natural Grocers to pay both pre- and post-judgment interest on any amounts awarded; and

F.   Ordering such other and further relief as may be just and proper.

Dated: September ___, 2015

Respectfully submitted,

BERNHARD ENGL, individually and on behalf of all others similarly behalf of all others similarly situated

By:   _/s/ Michael Obernesser_
        One of the Attorneys for Plaintiff
        And the Proposed Putative Class

Michael Obernesser
SIPRUT PC
1757 South 8th Street
Colorado Springs, Colorado 80905
Phone: 719.635.7707
Fax: 719.471.3186
E-mail: _mobernesser@siprut.com_
Attorney for Plaintiff and the Proposed
        Putative Class

Joseph J. Siprut*
Gregg M. Barbakoff*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.470.6588
E-mail: _mobernesser@siprut.com_
E-mail: _gbarbakoff@siprut.com_

Cornelius P. Dukelow*
ABINGTON COLE + ELLERY
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400
Fax: 918.588.3400
E-mail: _cdukelow@abingtonlaw.com_

*_Pro Hac Vice_ application to be submitted

4851-1209-1944, v. 1

- 18 -