**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02129-MSK-NYW

BERNHARD ENGL, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

NATURAL GROCERS BY VITAMIN COTTAGE, INC., a Delaware corporation, and VITAMIN COTTAGE NATURAL FOOD MARKETS, INC., a Colorado corporation,

    Defendants.

---

**[PROPOSED] STIPULATED ORDER RE:
DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

---

## I.    PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

The proposed plan is subject to amendment or supplementation based upon the results of anticipated future meet and confers by later agreements of the parties, if necessary, in light of further development, including, in particular, the parties' engagement of document hosting vendors and associated technical requirements. References are made to the Federal Rules of Civil Procedure for ease of reference.

## II.    COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter. The parties agree to cooperate in good faith regarding the disclosure and formulation of appropriate search methodologies, custodians, and

potentially relevant noncustodial sources of ESI in advance of any search and/or collection to the extent they have not already done so.

### III. LIAISON

The parties have identified liaisons to each other that are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

### IV. SCOPE AND LIMITATIONS OF PRESERVATION AND PRODUCTION OF ESI

1. The parties have preliminarily discussed and will meet and confer in an effort to reach agreement by no later than February 3, 2016, about the appropriate scope and limitations of both preservation and production of ESI in this case, including the number and identity of likely custodians; relevant date ranges; locations of potentially relevant data; timing of productions (including phased productions such as early production of information collected and produced in the context of other litigation or regulatory investigations or inquiry to facilitate future targeted discovery and production from more readily accessible sources of information, including certain types and/or sources of ESI, in the early stages of production); and ESI in the possession, custody or control of non-parties. No party is presently aware of any preservation issues that may impact the availability of potentially relevant information or data. To the extent counsel for a party becomes aware of such preservation issues, it shall take steps to promptly address the issue with

opposing counsel to assess the impact on the litigation and the appropriate next steps. The parties agree that preservation of potentially relevant ESI will be reasonable and appropriate.

2.   The parties agree to supplement this Joint E-Discovery Plan by February 12, 2016, regarding any agreements reached and any areas in dispute as a result of the meet and confer process to take place between now and February 3, 2016.

3.   As defined in the Rules, the parties agree to take the proportionality considerations addressed in Fed. R. Civ. P. 26(b)(2)(C) into account for purposes of production of discovery in this matter. The parties have, in addition, discussed and/or will discuss the concepts of testing and sampling which contemplate that a party may request to test or sample any designated documents or electronically stored information or tangible things. *See* Fed. R. Civ. P. 34(a)(1). Testing and sampling can be important tools in managing discovery, particularly discovery of ESI, and the parties agree to use them as and when appropriate in this litigation to ensure the streamlined and efficient conduct of discovery. Information sufficient to demonstrate adequate quality controls may be shared upon mutual agreement by the parties and as appropriate and necessary, to facilitate efficient and effective discovery.

4.   By February 2, 2016, the parties shall exchange in writing the information listed in items (a) through (e) below, as applicable. The parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response and that further inquiry may reveal additional information pertinent to the efficient, effective collection of potentially relevant materials. Each party reserves its right to amend or supplement its responses to items IV(4)(a) through IV(4)(e):

      a.      A list of the producing party's most likely custodians of relevant electronic materials, including each person's job title and a brief description of such person's responsibilities (including dates of employment by the applicable producing party). The parties shall add or remove custodians as reasonably necessary;

      b.      A list of each electronic communications and/or ESI storage system(s) that may house any potentially relevant data for the producing party and a general description of each system, including the dates of service, scope, and organization in each system;

      c.      A general description, or at the responding party's option, a copy of a written rendition of the party's operative document retention policies pertaining to any electronic communications and or/ESI storage system(s) that may house any potentially relevant data;

      d.      Other pertinent information about the responding party's electronically created and/or stored documents and an explanation regarding whether those documents are subject to limited accessibility, that is, those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost and/or lengthy time periods or substantial dedication of labor;

      e.      Whether a responding party contends that that party has or may have any potentially responsive ESI that is inaccessible or only of limited accessibility and, hence, not producible by that party. If a responding party does so contend pursuant to subparagraph (d), as to such ESI the party shall set forth:

           (i)      The general nature of such information (e.g., correspondence, financial planning, budget, etc.);

        (ii)        The reason(s) why the information is considered inaccessible or on only limited accessibility;

        (iii)        Information sufficient to identify the type of backup and disaster recovery media used and the number of backup tapes involved, or if applicable, the identity and version of applicable legacy software or systems, and when such software or systems achieved legacy status by the party;

        (iv)        Proposed capture and retrieval process available (if any) for identification and recovery of the information deemed inaccessible (including cost estimates if readily available); and

        (v)        Whether that information is to be preserved.

5.    If the requesting party intends to seek discovery of such wholly or partially inaccessible ESI, the parties shall promptly either (a) reach an agreement as to how they will proceed with retrieval and production, or (b) notify the Court that the parties have a dispute regarding arguably or allegedly wholly or partially inaccessible electronic data for resolution.

### V.    SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The parties will aim to establish search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties.

**VI.   PRODUCTION FORMATS**

1. The parties agree that attending to issues relating to form of production at the outset facilitates the efficient and cost effective conduct of discovery. The parties agree to produce documents in ☑ PDF, ☑TIFF, ☑ native, and ☑ a combination thereof (check all that apply) file formats. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

2. Appendix A sets forth technical specifications that the parties propose to govern the form of production of ESI in this litigation, absent other agreement by the parties within 21 days of the date a discovery request is propounded. (Requesting parties reserve the right to modify the technical specifications in their requests for production or depending on the selection of a platform for the hosting of data to maximize usability.) Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless agreed to in limited circumstances (as contemplated in the technical specifications).

3. Deduplication of ESI is expected and the parties agree to meet and confer in good faith regarding the terms and conditions of deduplication; however, in any event, deduplication is subject to the parties' good faith agreement to provide the requesting party with information about other custodians who possessed any specific ESI that would be available but for the deduplication as well as circumstances regarding admissibility under the Federal Rules of Evidence.

4. The parties share a desire to ensure that ESI is produced in an acceptable, searchable format. To that end, the parties have discussed but have not yet identified potentially relevant ESI

that would not be amenable to the proposed technical specifications. The parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful. The parties also recognize that certain information to be produced in discovery may warrant production in an alternative form for purposes of depositions and/or trial. To the extent that becomes necessary, the parties will meet and confer to reach agreement about such form and will seek Court intervention only if necessary.

## VII. CONFIDENTIALITY, PRIVACY, AND SECURITY OF INFORMATION

By January 19, 2016, the parties will negotiate and seek to present to the Court, for approval and entry, a proposed Stipulated Protective Order to govern the treatment of information warranting confidential treatment. To the extent the parties are unable to agree on any particular terms of such agreement(s), any disputed issues will be presented to the Court.

## VIII. DOCUMENTS PROTECTED FROM DISCOVERY

1. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

2. To the extent that a party determines that documents have been produced inadvertently that warrant privilege or work product protection, they may be clawed back subject to the terms of the Stipulated Protective Order.

3. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

### IX.   MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: January 12, 2016                              **SIPRUT PC**

By:     *s/John S. Marrese*

Joseph J. Siprut
Richard L. Miller II*
John S. Marrese
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Telephone: (312) 236-0000
FAX: (312) 400-8893
*jsiprut@siprut.com*
*rmiller@siprut.com*
*jmarrese@siprut.com*

Michael Obernesser
**SIPRUT PC**
1756 South 8th Street
Colorado Springs, Colorado 80905
Telephone: (719) 635-7707
FAX: (719) 471-3188
*mobernesser@siprut.com*

**ABINGTON COLE + ELLERY**

Cornelius P. Dukelow

-8-

                                **ABINGTON COLE + ELLERY**
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
Telephone: (918) 588-3400
FAX: (918) 588-3400
*cdukelow@abingtonlaw.com*

\* Admission Application To Be Submitted

**Attorneys For Plaintiff**

Dated: January 12, 2016        **HOLLAND & HART LLP**

        By:   *s/ Romaine Marshall*

Romaine Marshall
Engels Tejeda
**HOLLAND & HART LLP**
222 Main Street
Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5922
FAX: (801) 871-6139
*RCMarshall&hollandhart.com*
*EJTejeda@hollandhart.com*

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

Melissa K. Ventrone
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
55 West Monroe Street
Suite 3800
Chicago, Illinois 60603
Telephone: (312) 821-6105
FAX: (312) 704-1522
*Melissa.ventrone@wilsonelser.com*

-10-

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: February 1, 2016                    s/Nina Y. Wang
                                           Hon. Nina Y. Wang
                                           United States Magistrate Judge

Case 1:15-cv-02129-MSK-NYW   Document 67   Filed 02/01/16   USDC Colorado   Page 10 of 14

## **Appendix A**

## **Technical Specifications for Production**

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- Media may be delivered on CDs, DVDs or External USB hard drives. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- Each delivery should be accompanied by an image cross reference file that contains document breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

    Field Separator, ASCII character 020: ""

    Quote Character, ASCII character 254 "þ"

    Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

- A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the document and the relative path to the text file for that document on the production media.

-11-

PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as TIFF images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields where they exist in the file being produced:

  Beginning Production Number
  Ending Production Number
  Beginning Attachment Range
  Ending Attachment Range
  Custodian
  Other Custodian (if cross custodian de-duplication is employed)
  Confidentiality Designation
  Original Location Path
  Email Folder Path
  Document Type
  Author
  Page Count
  File Name
  File Size
  Hash Value
  Date Last Modified
  Date Created
  Date Last Accessed
  Date Sent
  Date Received
  Recipients
  Copyees
  Blind Copyees
  Email Subject
  Path to Native File

Conversation Index

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The file name should match the bates number assigned to the file. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions or hearings (such as converting to TIFF images in accordance with the above protocol).

- Notwithstanding the language of Federal Rule of Civil Procedure 34, upon review the requesting party may ask for certain other documents and/or databases that were initially produced in their petrified (TIFF or PDF) format to be produced in their native format in the event that the petrified version is not reasonably usable. If this is the case, the requesting party will submit a list of bates numbers identifying the documents. The documents should be produced in their unaltered native format with an accompanying text delimited text file (using the delimiters above) that contains the following fields:

    Beginning Production Number
    Ending Production Number
    Beginning Attachment Range
    Ending Attachment Range
    Path to Native File
    MD5 Hash Value

-14-

PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA

Generally, databases should be produced in a mutually agreeable data exchange format. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information:

Database Name
Type of Database
Software Platform
Software Version
Business Purpose
Users
Size in Records
Size in Gigabytes
A List of Standard Reports
Database Owner or Administrator's Name
Field List
Field Definitions (including field type, size and use)

Upon review of the list, the parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.