**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02129-MSK-NYW

BERNHARD ENGL, individually and on behalf of
others similarly situated,

      Plaintiff,

vs.

NATURAL GROCERS BY VITAMIN
COTTAGE, INC., a Delaware corporation, and
VITAMIN COTTAGE NATURAL FOOD
MARKETS, INC., a Colorado corporation

      Defendants.

## MOTION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to Colo. Rev. Stat. §§ 13-16-113, 13-17-201, Defendants Natural Grocers by Vitamin Cottage, Inc. and Vitamin Cottage Natural Food Markets, Inc. (collectively, "Natural Grocers") respectfully move for $233,814.20 in attorneys' fees and $7,024.37 in expenses incurred to defend this case filed by Plaintiff Bernhard Engl ("Plaintiff"). The case was dismissed on September 21, 2016 pursuant to the Court's Opinion and Order Adopting Recommendation and Granting Motion to Dismiss and Final Judgment [Dkt. Nos. 121 and 122].

Natural Grocers certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(a), counsel discussed the grounds for this motion and the relief requested with Plaintiff's counsel on September 29, October 4, and October 5, 2016 and have not been able to reach a resolution.

## INTRODUCTION

On September 21, 2016, the Court adopted the Magistrate Judge's recommendation to dismiss this case for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff filed his original Complaint on September 25, 2015. Natural Grocers filed a motion to dismiss on November 5, 2015. Natural Grocers filed a second motion to dismiss after Plaintiff was granted leave to amend the original Complaint on December 18, 2015. Natural Grocers was required to address multiple evolving damages theories and incur thousands of dollars to respond to Plaintiff's broad discovery requests. Natural Grocers is entitled to recover these fees and related costs pursuant to Colo. Rev. Stat. §§ 13-17-201 and 13-16-113 because Plaintiff's two causes of action were predicated on tort – specifically, on Natural Grocers' alleged fraudulent non-disclosure of its cybersecurity practices.

## ARGUMENT

**I. NATURAL GROCERS IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS BECAUSE PLAINTIFF'S CLAIMS SOUND PRIMARILY IN TORT**

In relevant part,[1] § 13-17-201 provides,

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Colo. Rev. Stat. § 13-17-201.

---

[1] Both sections exempt instances where a motion to dismiss is "treated as a motion for summary judgment" under rule 12(b)(5) and "disposed of as provided in rule 56 of the Colorado rules of civil procedure." *See* Colo. Rev. Stat. § 13-16-113(2); 13-17-201. This exception does not apply here because the Court dismissed the case pursuant to Fed. R. Civ. P. 12(b).

Similarly, § 13-16-113 provides for the recovery of costs under the same conditions as § 13-17-201. *See* Colo. Rev. Stat. § 13-17-201. "The Tenth Circuit has held that, when exercising diversity jurisdiction, federal courts should apply § 13-17-201 when Colorado state law tort claims are dismissed under Fed.R.Civ.P. 12(b) because federal courts must apply the substantive law of the forum state and attorney fee statutes are considered substantive for diversity purposes." *Nero v. American Fam. Mutual Ins.* Co., 2013 WL 5323191, at *7 (D. Colo. Sept. 23, 2013) (citing *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000)).[2] Moreover, the statute "applies not only to tort actions involving death or injury to person or property, but also to tort actions involving mere economic injury." *Bldg. on Our Best LLC v. Sentinel Ins. Co.*, 2016 WL 1756488 (D. Colo. May 3, 2016) (quotations and citations omitted).

Sections 13-17-201 and 13-16-113(2) advance an important state law policy discouraging the filing of unsustainable tort claims. "These fee shifting provisions were enacted as part of the [Colorado] General Assembly's substantial tort reform efforts of the mid-1980s." *Crandall v. City and Cnty. of Denver*, 238 P.3d 659, 662 (Colo. 2010). "The statutory language contains no words that suggest anything other than a mandatory award" and "[b]y their terms, the two statutes permit no exception." *Id.* at 663. "As Colorado courts have recognized with respect to section 13-17-201, the mandatory language applies to all tort actions, regardless of whether they raise questions of first impression." *Id.* (collecting cases). Where, as here, "a plaintiff has pleaded both tort and non-tort claims, a court must determine, as a matter of law, whether the

---

[2] *See also, Crandall v. City and County of Denver*, 238 P.3d 659, 665 (Colo. 2010) ("the express statutory language of sections 13-16-113(2) and 13-17-201 mandates award of costs and attorney fees to the defendant in the event that a plaintiff's tort action is dismissed pretrial on a . . . 12(b) motion to dismiss").

essence of the action was one in tort, in order to ascertain if section 13-17-201 applies." *Castro v. Lintz*, 338 P.3d 1063, 1068 (Colo. App. 2014). *Gagne v. Gagne*, 338 P.3d 1152, 1167 (Colo. App. 2014) (same). In making this determination, a court

> first appl[ies] the 'predominance' test, assessing whether the 'essence of the action' is tortious in nature (whether quantitatively by simple number of claims or <u>based on a more qualitative view of the relative importance of the claims</u>) or not. The Court [] then turn[s] to the question of whether tort claims were asserted to unlock additional remedies only where the predominance test fail[s] to yield a clear answer, such as when the tort- and non-tort claim are equal in number <u>or significance</u>.

*Gagne*, 338 P.3d at 1168 (adopting analysis of *Shell v. Henderson*, No. 09-cv-00309-MSK-KMT, 2014 WL 3716165, at *3 (D.Colo. July 28, 2014) (rev'd on other grounds)) (emphasis added). Plaintiff's putative class action meets both of these tests.

### A. Under the Predominance Test, Plaintiff's Putative Class Action Sounds Primarily in Tort

Plaintiff's putative class action sounds primarily in tort because the essence of both of his claims is "nondisclosure" – failing a duty to disclose. *See, e.g.*, Am. Compl. ¶¶ 46, 65-85 [Dkt. No. 47]. When applying the "predominance test" to assess whether the essence of an action is tortious in nature for purposes of §§ 13-17-201 and 13-16-113(2), district courts focus on the manner in which the plaintiff's claims are pled. *See, e.g., Bldg. on Our Best*, 2016 WL 1756488, at *2 (citing *Nero*, 2013 WL 5323191 at *7). Here, Plaintiff pleads two claims: one for breach of an alleged implied contract, and the other for alleged violation of the Colorado Consumer Protection Act. *See* Am. Compl. Dkt. No. 47, ¶¶ 65-85.

Applying the predominance test, this class action sounds primarily in tort for three reasons. First, "[s]everal courts, in applying § 13-17-201, have concluded that a claim alleging a

violation of the CCPA is a tort claim." *Bldg. on Our Best*, 2016 WL 1756488, at *3 (collecting cases). Here, Count II of the Amended Complaint asserts a claim under the CCPA, and thus, facially, it "sounds in tort" as a matter of law. *See* Am. Compl. Dkt. No. 47, ¶¶ 70-85. Moreover, the substance of Plaintiff's Count II shows that the claim sounds in tort. The claim is based on Natural Grocers' alleged failure "to disclose the material fact that its computer system and data security practices were inadequate to safeguard customers' personal and financial data from theft." *Id.* ¶ 71. Furthermore, Plaintiff alleges that Natural Grocers "knew at all relevant times that its data security practices were inadequate to safeguard customers' personal and financial data from theft," but nevertheless withheld this information from Plaintiff because it knew that "if it disclosed [this], . . . Plaintiff and Class members would not have purchased goods" from Natural Grocers. *See id.* ¶¶ 72, 75. Plaintiff concludes, Natural Grocers alleged fraudulent and deceptive acts and omissions were intended to induce, and did induce, Plaintiff's and the other Class members' reliance on [Natural Grocer's alleged] deception that Plaintiff's and Class members' personal and financial information was secure and protected when using debit and credit cards to shop at" Natural Grocers. *Id.* ¶ 79. Thus, Count II pleads a claim for nondisclosure and fraudulent inducement, which inarguably sound in tort.

Second, as pled, Count I of the Amended Complaint also sounds primarily in tort, even though Plaintiff dressed it as a "breach of an implied contract" claim. *See* Am. Compl., Dkt. No. 47, ¶¶ 65-69. In pleading this claim, Plaintiff "incorporated paragraphs 1-64," which included allegations that Natural Grocers knew that Plaintiff "would not [have] purchase[d] a retailer's goods if [he had known] that such a retailer had not implemented sufficient data security measures to protect customers' personal and financial information." *Id.* ¶¶ 65, 46. Plaintiff

further alleges that he believed that a portion of the price he paid for each product at Natural Grocers consisted of consideration for cybersecurity in compliance with industry standards. *See id.* ¶¶ 47, 66-68. In other words, Plaintiff claims that Natural Grocers breached an "implied contract" by failing to disclose to him that it was not using any portion of the funds it collected from Plaintiff at the cash register to pay for adequate cybersecurity. Thus, as with the CCPA claim, the essence of the implied contract claim is nondisclosure of an existing fact – i.e., Natural Grocer's alleged failure to disclose that its electronic systems were not secure enough to protect Plaintiff's credit card information at the time he used it at a Natural Grocers' store.

Third, both of Plaintiff's claims sound in tort because the harm that Plaintiff seeks to redress is the same under both counts, i.e., alleged damages to his personal information. *See* Am. Compl. ¶¶ 69, 83 [Dkt. No. 47]. In determining whether a claim sounds in tort for purposes of the fee-shifting statute, courts consider that "[t]he primary purpose of tort law is to compensate plaintiffs for injuries wrongfully at the hands of others." *Castro*, 338 P.3d at 1069. That is exactly what Plaintiff seeks here: compensation for the alleged damages that he sustained as a result of Natural Grocers' alleged harm to his personal property, i.e., his personal and financial information. *See* Am. Compl. ¶¶ 69, 83. Paragraph 69 of the Amended Complaint, which pleads the alleged damages Plaintiff sustained as a result of the purported implied contract, repeats verbatim Paragraph 83 of the Amended Complaint which sets out the alleged damages Plaintiff sustained as a result of Natural Grocers' tort in breaching the CCPA. *See* Am. Compl. ¶¶ 69, 83 [Dkt. No. 47]. As detailed below, Plaintiff asserted the CCPA claim to seek remedies not otherwise available under a breach of contract claim (especially since there was no contract, implied or otherwise, between the parties). It is also clear that under both of his claims, Plaintiff

was seeking redress for injuries allegedly sustained at the hands of Natural Grocers. He was not seeking compensation for the breach of any contractual promise. Simply put, §§ 13-17-201 and 13-16-113(2) apply because Plaintiff's entire case sounds in tort.

### B. Natural Grocers is Entitled to its Attorneys' Fees and Costs Under § 13-17-201 and 13-16-113(2) Because Plaintiff Pleaded the CCPA Claim to Obtain Relief Beyond What is Available Under a Breach of Contract Claim

Natural Grocers may recover its fees and costs even if Plaintiff's breach of an implied contract claim was of equal importance to his CCPA claim. The fee-shifting statutes apply if a plaintiff pleads the tort claim to "obtain relief beyond what was available solely under a breach of contract theory." *Crow v. Penrose-St. Fracis Healthcare System*, 262 P.3d 991, 997 (Colo. App. 2011) (awarding fees under § 13-17-201 where plaintiff pled equal number of tort and non-tort claims); *see also, Gagne*, 338 P.3d at 1168 (same). Here, the way Plaintiff pled his claims shows that he unequivocally included the CCPA claim to seek relief beyond what is available on a breach of an implied contract claim.

Specifically, Plaintiff alleges that Natural Grocers purportedly violated the CCPA in two different ways. First, he claims that Natural Grocers allegedly breached the CCPA by fraudulently and deceptively inducing Plaintiff to purchase goods using his credit without disclosing that its cybersecurity procedures were allegedly noncompliant with industry standards. Am. Compl. ¶¶ 71-80. Second, he alleges that Natural Grocers breached the CCPA by failing to provide "timely, adequate, and direct notice" of the Cyberattack pursuant to Colorado's Data Breach Statute. *Id.* ¶¶ 81-82. Based on these allegations, Plaintiff pleaded that he "and the Class are [] entitled to equitable relief to remedy" Natural Grocers' purported violation of the CCPA. Am. Compl. ¶ 85.

Correspondingly, Plaintiff asks the Court to enter an order directing Natural Grocers to (a) pay for credit monitoring services for Plaintiff and other class members and (b) "disseminate individualized notice of the [Cyberattack] to all Class members and to post notice of the [Cyberattack] in all of its affected stores." *See* Am. Compl. ¶ 23, subsections C, D. In fact, Plaintiff expressly distinguishes these remedies from "actual damages" arising out of Natural Grocers' alleged breach of the implied contract. *See id.* ¶ 23, subsection B. Thus, on its face, the Amended Complaint shows that Plaintiff included the CCPA claim to obtain relief beyond his breach of an implied contract claim. Therefore, the fee shifting statutes apply even if Plaintiff's contract and tort claims were of equal importance.

## II.   NATURAL GROCERS' ATTORNEYS' FEES ARE REASONABLE

"To determine the reasonableness of a fee request, a court must begin by calculating the 'lodestar amount,' which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Nero*, 2013 WL 5323191 at \*8 (citations omitted). "The lodestar amount may be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved." *Id.* (citation omitted). Here, the lodestar amount of Natural Grocers' fees is $233,814.20, based on its attorneys' hourly rate multiplied by their respective number of hours billed. *See* Marshall Decl., Ex. 1, ¶¶ 12-18.

Both the billable rate and the amount of time billed are reasonable under applicable standards.

### A. The Billable Rats are Reasonable

"A 'reasonable rate' is defined as the prevailing market rate in the relevant community for an attorney of similar experience." *Nero*, 2013 WL 5323191 at *9. The moving party is entitled to fees when it produces "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (citation omitted). Here, both recent case law and admissible evidence shows that the billable rates charged by Natural Grocers' counsel are in line with those of the legal community in Denver. *See, e.g.*, *Nero*, 2013 WL 5323191 at *9 ("the Court finds that a reasonable rate for a lead attorney in a case such as this, which requires knowledge of commercial litigation and class action claims, is $500.00.") (collecting cases); Marshal Decl., Ex. 1, ¶¶ 12-17.

### B. The Number of Hours Billed is Reasonable

"To determine the reasonableness of the hours expended, a court considers several factors." *Nero*, 2013 WL 5323191 at *10. "First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client." *Id.* (citations omitted). Second, it considers whether "counsel used 'billing judgment' in winnowing down the hours actually spent to those reasonably expended." *Id.* at *10. "In determining what is a reasonable time in which to perform a given task, an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) the potential duplication of services caused by the presence of multiple attorneys when one would suffice." *Id.* at *10. All of these factors weigh in favor of finding that the amount of time billed in this case was reasonable.

First, this case involved issues that are complex and novel. *Nero*, 2013 WL 5323191 at *10. As the Court recognized, Natural Grocers' Motion to Dismiss implicated questions of first impression within the Tenth Circuit [*See* Dkt. No. 121 at 6]. Indeed, courts outside of the Tenth Circuit have analyzed these issues closely and have still arrived at some differing conclusions, further complicating the task of briefing the motion to dismiss. Thus, the first factor weighs in favor of finding that the number of hours billed in this matter was reasonable.

Second, Natural Grocers employed reasonable strategies in resolving Plaintiff's case. *Nero*, 2013 WL 5323191 at *10. Specifically, Natural Grocers moved for dismissal of the case for lack of standing and failure to state a claim early in this case. *See* First Motion to Dismiss dated November 5 [Dkt. No. 18]. It agreed to Plaintiff's request for leave to amend his Complaint, only to be forced to renew its Motion to Dismiss because Plaintiff failed to cure the jurisdictional deficiencies of his original Complaint. *See* Renewed Motion [Dkt. No. 57]. Natural Grocers' strategy in seeking dismissal for lack of standing was not only reasonable in light of the Court's ruling, but it also comports with the strategy employed by defendants in virtually every class action where, as here, Plaintiff fails to allege an actionable injury following a cyberattack. *See, e.g., In re SuperValu, Inc.*, 2016 WL 81792, at *3 (D. Minn. Jan. 7, 2016) (motion to dismiss for lack of standing and failure to state a claim); *Whalen v. Michael Stores Inc.*, 153 F.Supp.3d 577, 579 (E.D. N.Y. 2015) (same); *Green v. eBay Inc.*, 2015 WL 2066531, at *1 (E.D. La. May 4, 2015) (same).

Third, the amount of time billed is reasonable in light of the responses necessitated by the maneuvering of the other side. *Nero*, 2013 WL 5323191 at *10. Plaintiff repeatedly forced Natural Grocers to incur every hour of billable time summarized above. For example, Plaintiff's

failure to include the allegations regarding the $25 penalty purportedly assessed by Gold's Gym in his original Complaint forced Natural Grocers to incur the cost related to the Renewed Motion to Dismiss. Also, Plaintiffs' broad discovery requests required Natural Grocers to incur significant fees in reviewing thousands of pages of documents for production. Natural Grocers sought to delay discovery pending resolution of the Renewed Motion to Dismiss to avoid any unnecessary attorneys' fees and costs. Plaintiff objected, and ultimately convinced the Court to allow discovery to proceed while the Renewed Motion to Dismiss was pending. In short, the "maneuvering of the other side" justifies the number of billable hours incurred in this case.

Fourth, the detailed time entries submitted in support of this Motion show that Natural Grocers' attorneys' avoided duplication of billable services. *See Nero*, 2013 WL 5323191 at \*10. *See* Ex. 2.

In sum, the number of hours billed in this matter was reasonable and thus compensable under § 13-17-201.

### III. NATURAL GROCERS' COSTS AND EXPENSES ARE REASONABLE

Section 13-16-113 "does not limit the type of costs that can be recovered." *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 335 F.App'x 707, 717 (10th Cir. 2009). For example, in *Infant Swimming*, the court upheld that trial court's award of "computerized legal research expenses and travel expense pursuant to" § 13-16-113 following dismissal of a diversity action for lack of injury. *Id.; see also*, *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-02528-WDM-BNB, 2011 WL 3294351, at \*4 (D. Colo. ) (warding costs under § 13-16-113 because federal law does not apply where "there is an explicit state statutory authority" for issuance of costs).

Here, most of Natural Grocers' costs consists precisely of travel costs and research expenses indistinguishable from those awarded in the *Swimming Research* case under §13-16-113.[3]  *See* Ex. 3.  These costs are reasonable in light of the amount of research necessitated by the briefing of a matter of first impression, and the numerous damage theories that Plaintiff pled.

## **CONCLUSION**

For the foregoing reasons, Natural Grocers requests that the Court award its attorneys' fees in the amount of $233,814.20 and costs in the amount of $7,024.37.

DATED October 5, 2016.

                Respectfully submitted,

                */s/ Romaine Marshall*
                Romaine Marshall (Utah Bar No. 9654)
                Engels Tejeda (Utah Bar No. 11427)
                HOLLAND & HART LLP
                222 S. Main Street, Suite 2200
                Salt Lake City, UT 84101
                Phone: (801) 799-5922
                RCMarshall@hollandhart.com
                EJTejeda@hollandhart.com
                Counsel for Natural Grocers

---

[3] The costs sought in this Motion exclude the costs that are compensable under Rule 54 and 28 U.S.C. § 1920, which Natural Grocers has requested pursuant to its concurrently filed bill of Cost.

-13-

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2016, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Michael Obernesser: mobernesser@gmail.com
Joseph J. Siprut: jsiprut@siprut.com
Richard Steven Wilson: rwilson@siprut.com
Richard L. Miller, II: rmiller@siprut.com
Cornelius P. Dukelow: cdukelow@abingtonlaw.com

*Counsel for Plaintiff Bernhard Engl*

/s/ Engels J. Tejeda